Case number 11-3072, Peoples v. Williams-Southampton. Counsel, please approach. Let us know who you are, for the record. Your Honor, my name is Pat Cassidy. I represent Mr. Sutherland. Good morning, Your Honors. Assistant State's Attorney Joan Frazier for the Peoples. Good morning. Okay, you guys know the drill. Go ahead, proceed. I was just about to interrupt. Please. Your Honors, may it please the Court. Counsel. Again, my name is Pat Cassidy. I represent Mr. Sutherland on appeal. Your Honors, the instant claim of ineffective assistance of counsel contained in Mr. Sutherland's successive petition in this case is a substantial one, and it's never been addressed by a court. Mr. Sutherland argues that his trial attorney was ineffective for failing to secure the testimony of his father as an alibi witness. And the record shows that his father's absence at trial was prejudicial to Mr. Sutherland. The trial pitted the testimony of a single identification made by Erica Sutherland, a 6-year-old child, who said she saw the defendant shoot her and her mother. Pitted that against Mr. Sutherland's own testimony, where he said, yes, I went to Elaine Sutherland's house that night, but I left, and then I went to my father's to try to borrow money. Now, part of that was corroborated by the State. Then he – you can't stop there. Then he said he went – after being at his dad's house, he went to another party. So how is this – how does this add up to anything if you can't really establish that he would have been, in fact, an alibi witness? After all, it was testified to at trial by the defendant himself and plenty of other witnesses as to his whereabouts. You don't even have the alibi time here. Well, we have – the father's affidavit says he lives 15 minutes, 20 minutes away from Elaine Sutherland. The State's witness says Mr. Sutherland left around 10.30. She saw him, you know, leave. We know that. What the jury doesn't know is what happened next, as you point out. Wait. The defendant said himself that his father was either asleep or drunk. No, Your Honor. He didn't say that? No, he did not say ever that his father was asleep. The defendant said, I went to my father's. I spoke to him. I asked him for money. We had a conversation. My father said he didn't have any money, and I left. The father's affidavit says exactly that. He also said that he thought his dad was drunk, and that's why defense counsel in closing argument said I didn't call his dad because his dad was drunk. He said that, right. What I meant to say was he never at any time said that his father was asleep. No, but I don't want to cross over into the prejudice prong that we just discussed in the previous case, but you have a situation here where the defense lawyer was aware of the existence of the witness, aware of the fact that his own client said that the defendant's father was drunk, and made a tactical determination that this was a witness he did not care to present in the case. And so the arguments that somehow we failed to investigate the reason why his father wasn't there is really undercut by the fact that from every indication, it was a strategic decision. A couple things in response to that. People who take the Illinois Supreme Court says we don't get into strategic decisions at this stage of proceedings. But on that, and we also have to remember this defense attorney in opening statements told the jury that Mr. Sutherland wasn't there. He went to his father's to borrow money. Then the jury hears Mr. Sutherland say it, but they never hear the father say it. And even if the father may have been a few beers. The absence of corroborative testimony, even if the timeline doesn't fit, is something that ought to allow this case to go forward after direct appeal, after post-conviction relief attempt for it, after a habeas, after a 214-01, and now on a successive. You can show cause or prejudice. The failure to call a witness who was drunk at the time of the partial alibi. But the most important of these alibi witnesses, I don't think there's a dispute that this witness was, if you don't think it was right on when the shooting occurred, it was the closest there, right? Because he's 15 minutes away from the latest alibi witness. The defendant himself said after he left his father, who he thought he was drunk, he went somewhere else, and then the murder happened after that. How is he an alibi witness? The defendant said he went to his father's. That's 20 minutes later. So that puts it close to 11 p.m., right? And the shooting, and it means he's 15 to 20 minutes away at that time. And the shooting takes place between 11 and 1115. So I'm not saying it's the best alibi, but it's the best one he had. And it's the one he promised the jury. Forgetting the testimony, because I think you're not going anywhere with that. Are you asking us to change Pitzenberger and the whole post-conviction process here to cause or prejudice? It seems like you are. No, I'm asking this Court to apply Martinez and apply Trevino. It came out last week. It says that cause, you know, you mentioned the four things. Well, you can't prove cause. Your own brief says you can't prove cause. Well, after Martinez, I can prove cause by the fact that I know. By an exception. Exactly. We are in perfect agreement on that. Admittedly, you cannot prove cause, right? On the old-fashioned way, say, or the prior way. Exactly. We can't show an objective factor other than the failure to appoint counsel, Your Honor. I think we're on the same page. Right. And this case doesn't get briefed without Martinez. But Martinez is extremely good law for us. What it says is you brought up the 1401 petition with habeas, the first petition. What do all these things have in common in this petition? He's never been given a lawyer for any of these collateral proceedings. Martinez recognizes that if the State doesn't want to give you a lawyer as their choice, they may pay a price for that. They're going to pay a price for that in federal courts. That's clear after Trevino. Is the defendant here and the defendant in Martinez in the same sort of situation? The defendant here is in the same sort of situation as Trevino, almost exactly. In fact, the worst situation. And so what Trevino said was, and this just came out last week, he said, look, Texas doesn't direct every single claim of ineffectiveness to post-conviction proceedings. They allow sometimes, if the record happens to be perfectly developed for direct appeal, a claim to be raised on direct appeal. And so the question was, well, does Martinez apply? Because Martinez, of course, was about Arizona, which said you can never raise a claim of ineffectiveness on direct appeal. And the court in Trevino said, yes, Martinez applies to a State like Texas. Because most claims, the typical ineffectiveness claim is directed to post-conviction proceedings. And that's Illinois. There are circumstances where you might be able to raise a claim on direct appeal in Illinois. But a typical claim. Not only could you, in this case it was raised maybe in a different articulation in the first post-conviction petition of the defendant. He complained about it then. He complained about the prosecutor putting, well, I think he called it prosecutorial. He put the issue of his dad in, he put that at issue in the initial post-conviction petition. He put it at issue in the 1401. He's putting it at issue again here. And it was at issue at trial. Not only was it at issue at trial, I think you have a bit of a burden to persuade us that it's outside the record here. Well, the affidavit is certainly outside the record from his father. But going back to the idea that there's a trial strategy here, I do want to point out that the day the defense presented its case to the jury, the day the father is in the hospital, the night before, defense counsel in this case spent the night before in jail. That's not normal. I've never seen that before. The defense counsel was jailed by the trial judge the night before the defense presented its case. We read the transcript. Are you saying that it wasn't justified based on what he kept on doing? It was justified because the defense counsel was not a competent attorney. So I think that undercuts the presumption, which I don't think the presumption of strategic decisions comes into later stages of post-conviction proceedings. But that's something that severely undercuts any such presumption. Your Honor, as far as him putting this in his initial petition or something like it, he didn't have an attorney to put it there correctly. And, of course, we know from the only Supreme Court case, I think, in Jones, on appeal from a dismissal of a post-conviction petition, you're stuck with the claims the defendant raised. Okay. Well, let's hypothetically be generous here. We'll give you a cause. Where's the prejudice? Well, the prejudice is that it was the most important of these alibi witnesses because it's the closest one in time. The top one is the most important one? The alibi is about time, Your Honor. And I don't understand how having some beers means this didn't happen. But he's an alibi witness. And even if you say that calling the drunken man who presumably would then be relied upon to not only establish that his son was there, but also through his torpor be able to say what time he was there, then you're confronted with what the rest of the evidence is in this case about harassing phone calls, about the threats, about the identification of the stepdaughter saying, this is my stepfather who came into our room and shot me and shot my mother. And the witness who puts him on the scene at the time and fails to note the presence of a computer being removed from the trunk, which was the defendant's ostensible justification for being there after he had been told in no uncertain terms over the course of several days that this woman wanted no contact with him whatsoever, and having with him the gloves and the face mask with the eyes cut out, and all of those things. And the question is whether the testimony of the drunken father would have made any difference to any reasonable jury under those circumstances. Well, let's ask the prosecutor in this case whether it would have made a difference. Because the prosecutor certainly thought it did. The prosecutor hammered the defense for the failure to call the father. They correctly did so because the defense had referenced the father in opening statements. The prosecutor told the jury that the failure for this father to testify means he's lying. He shot his stepdaughter in the face, and she said, Will Dunn shot us. How are you going to overcome that? By pointing out he's somewhere else. I mean, it's got to be it, right? Come on. Come on. She identified him to the neighbor. This is like people versus Poland 2. Will Dunn shot us. She identified him to the police officers. She went through photographs and identified him. And in the face of that, you're saying that it's still so prejudicial that they didn't call his father to testify. The defense theory was that she's a young girl, that she was subject to suggestion. I know. The Power Rangers defense. That's correct, Your Honor. And that was their theory. I mean, this Court, reasonable doubt was raised on direct appeal, and this Court certainly found it was sufficient. But it said a single witness identification is enough, but it didn't say it was overwhelming evidence. Counsel, I think you'd be hard-pressed to find a record, a transcript, where there's more evidence of a defendant's guilt than you found here. It's a single witness identification, right? No, it's not. This didn't happen out of the blue. It's not like he was some random person who broke in trying to get a stereo and started shooting. This was in the context of a domestic disturbance, that he was very upset with his wife because she wanted a divorce. You can't eliminate all that evidence from our consideration here. We're talking about prejudice. Reasonable probability. Cause or prejudice, which is what you want. We'll give you cause. Let me step back a moment. Reasonable prejudice is just to file the petition. This petition isn't at the first stage, second stage, or third stage. If you're going to hold a client, a pro se client, to prove prejudice at a level that you would do after an evidentiary hearing, then this process isn't going to work. We're trying to file a petition. Mr. Cassidy, with all due respect, and you're doing a fine job with a difficult record, to analyze it, even understand what you're talking about, it's difficult to put on blinders to what the rest of the evidence would be, and it's unjustified for us to put on blinders for the rest of it. I agree with you. It's not the same as judging the second prong of Strickland after an evidentiary hearing. There's no question. You're absolutely correct about that. But there still is a prejudice prong to the determination of this subsequent petition, and we must consider what the rest of the evidence was under the circumstance. I understand. I'll just finish by saying that I look at prejudice as an effect on the jury. Could it have reasonably affected the jury? And I think the prosecutor's arguments show that it could have, Your Honor.  Good morning, Your Honors. May it please the Court. Joan Fraser on behalf of the people. The first point I'd like to make, Your Honors, is that Trevino and Martinez have no application in this case. Trevino and Martinez are federal habeas corpus cases. They have nothing to do with post-conviction. We're talking apples and oranges. Under Trevino and Martinez, that's the federal gateway for a state criminal defendant who's attempting to get federal analysis of his claim. It's not a second petition. It's not a successive petition. It's federal habeas relief. There's no parallel between that and the State Post-Conviction Act, where the question is whether a defendant can establish cause and precedence. A true parallel, had it been present in Martinez and Trevino, would have been if those cases involved successive petitions. The petitions analyzed in Trevino and Martinez were not successive. Under federal habeas corpus law, the question whether a federal successive petition can be analyzed is analyzed under the same sort of cause and prejudice test that we apply to state post-conviction petitions. So as the court in Miller properly found, there's no application between Martinez and Trevino. They simply do not apply. They are not constitutional decisions by their own terms. They are equitable decisions. They modify the definition of cause for purposes of filing a federal habeas corpus petition. There's no parallel. So they don't apply here. Excuse me. Even if they had applied here, which they don't, but even if they had, they don't fit the situation. Martinez is limited to states where a defendant has to bring his effective assistance claim and initial review collateral proceeding. That's not the law in Illinois. As a matter of fact, under Illinois law, if you have an ineffective assistance claim and you don't bring it when you could, which is the case at bar, you've waived it. You've forfeited it. You must bring it. So Martinez, by its very terms, doesn't apply. Trevino wouldn't apply either, putting aside the fact that it involves something totally different from a successive sort of petition. Well, he wasn't required to bring the ineffective assistance on the direct appeal because there was the supplemental information supplied later by way of affidavit that established what the testimony presumably would have been, which is something that could only be received either in a motion for new trial, proceeding an appeal, or, as is usually the case in a post-conviction. But the point is that he certainly could have raised the claim on direct appeal without an affidavit. But how would he demonstrate what the testimony would have been? Because he testified to it at trial. The defendant testified at trial. I think it's correct that he would have allowed the defeat. He wouldn't have opposed, as a state's attorney, a direct appeal where the only record as to what the absent witness would have said is the defendant's statement about what the witness would have said? Absolutely, Your Honor. You would oppose that, would you not? We would say without foundation for the reasons this Court has discussed this morning. But if the question is, did he have grounds to raise ineffective assistance, absolutely. Because the defendant testified at trial. Absolutely, Your Honor. I have an alibi. My alibi, among other things, is that I was with my father. So as counsel pointed out, the attorney was raising a closing argument. When you have strong points, why don't you stick to those? All right, Your Honor. But I still maintain that absolutely he could have. All right. The Court doesn't accept it. But certainly there is no cause of prejudice in this case. If the defendant could have brought a crankle motion, we maintain he could have raised it on direct appeal. He could have raised it on post-conviction. He had an attorney who represented him on the dismissal of his post-conviction petition. You're not supposed to raise claims on appeal from a dismissal of a post-conviction petition if they're not in the petition. But it's been done. And it, in fact, was done in this case where the defendant's attorney in the post-conviction case raised the issue about the identification instruction. You can raise it in the habeas corpus petition. He could have raised it, and he did, in Section 2-1401 petition, which is where he submitted his affidavit for the first time. So as the defendant points out and concedes, this claim is absolutely defaulted. The federal cases he relies on as supported by the Miller case offer no support whatsoever. Trevino also, getting back to Trevino, even if that didn't apply in this case, it doesn't fit the Illinois system. In Trevino, the court said, for purposes of federal habeas corpus review, you can establish cause if, in effect, you never had an attorney represent you in bringing an ineffective assistance claim. And the U.S. Supreme Court said there are two reasons for this. First of all, because the Texas Supreme Court has actually directed criminal defendants to bring their claim on collateral review, and also because under Texas law it's virtually impossible to raise an ineffective assistance claim in a typical direct appeal. That's not the case in Illinois. The Illinois Supreme Court has never directed criminal defendants, don't bring your claim until your collateral petition. No, but they have said, and we have said, that if you're relying on things that are outside the record of the trial, that you would be better served by bringing it in a context where you would be able to supplement the record, which would be in a post-conviction, for example, or a habeas. Right? That's correct, Your Honor. That's absolutely correct. It's true that if you have an affidavit or outside evidence, you're a defendant, you want to submit that to the court, it has to be by way of a post-conviction petition. But if you don't need extra evidence to bring your claim, you can bring it on direct appeal, and the court sees that all the time. One thing that Trevino, Martinez, and the Illinois cases relied upon by defendant and haven't done away with is the need to show a substantial claim. The defendant clearly does not have a substantial claim. The court has already talked about it this morning. His father was drunk, or I cited in my record, according to my notes, he said his father was drunk or asleep. He couldn't offer any support. The defendant already had four alibi witnesses testify for him. His father, if he had called them, would have hurt him. To call somebody who is so lacking in credibility would have actually hurt his case. And furthermore, it's well-settled that which witnesses an attorney decides to call is a matter of trial strategy under Strickland. So even if defendant had called his father, there is no reasonable probability whatsoever that it would have made a difference at the defendant's trial. So for these reasons, the defendant has not established cause and prejudice. He concedes he has an established cause. Martinez and Trevino have no application because that involves federal habeas corpus cases. And therefore, we ask that this court affirm the trial court's denial of defendant's motion to file a successful petition. Thank you, Your Honors. Thank you, Counsel. Mr. Cassie, you made a comment that I didn't follow up on, and I think I should. You indicated, I think forthrightly, that this case doesn't get briefed without Martinez. Martinez is the key to showing cause in this case. Okay. And Trevino. Unless we are persuaded by your rather articulate arguments here in your brief and in front of us today that we're compelled to follow Martinez, even though it's federal habeas corpus law. And I think Illinois from court has both took the cause and prejudice test from habeas law. It's followed it and took the actual innocence test from habeas law. I still never heard opposing counsel articulate a reason why they would just decide now to depart from. So we're going to have two definitions of cause, one for federal habeas and U.S. Supreme Court cases and one for Illinois. I don't see our court doing that. I think it's unnatural. I don't know if your opponent, your colleague here is trying to say that, but I think she's rather clearly saying that no matter how you articulate it, you still don't have anything substantial here. She also makes that argument. I do want to correct the record to make sure. The record does not say his father was asleep. Pages 244 and 245 in Mr. Southerland's testimony. It's not there in 257. So either end of the disjunctive is enough for me, drunk or asleep. I understand. And I just think this case shows, and I think what opposing counsel said, shows how we don't have meaningful review of an ineffectiveness claim in Illinois without appointing a counsel. If you bring it up on direct appeal and you're not going to have all the facts in the record, the state's going to say, nope, you don't have enough facts in the record. If you wait to bring it up in a post-conviction proceeding, they're going to say, well, there was enough in the record for you to have brought it up on direct appeal. It's a waiver every way in this state. It's a worse state in this regard than Texas. And that's why I'm very confident that, in federal court at least, Illinois is going to be in Martinez's jurisdiction, and I believe the Illinois Supreme Court will follow that. Thank you, Your Honor. Thank you. Thanks for the briefs and arguments, and we will take the matter into consideration and get back to you directly.